UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN MILLARD HURD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 7:17-cv-00319 |
| v. | ) |
| | ) By: Elizabeth K. Dillon |
| | ) United States District Judge |
| CARDINAL LOGISTICS MANAGEMENT | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff John Millard Hurd brings this action against Cardinal Logistics Management Corporation (Cardinal) under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq.*, and the ADA Amendments Act of 2008. Before the court are defendant's motion for judgment on the pleadings (Dkt. No. 19), plaintiff's motion for partial summary judgment (Dkt. No. 35), and defendant's motion for summary judgment (Dkt. No. 37). For the following reasons, the court will grant plaintiff's motion for partial summary judgment, grant in part and deny in part defendant's motion for summary judgment, and deny as moot defendant's motion for judgment on the pleadings.

I. INTRODUCTION

Hurd has a medical history of complex partial epilepsy. From 2013 to October 2015, Hurd drove a commercial truck for Plygem Industries, Inc. Pursuant to 49 C.F.R. § 391.43, Hurd underwent medical testing and was certified as a qualified driver by medical examiners; a medical examiner approved by the Department of Transportation certified Hurd for the two-year period between November 3, 2014, and November 3, 2016.

Cardinal acquired PlyGem in June 2015, and PlyGem announced it would no longer need commercial drivers after October 31. Hurd applied to be a commercial driver with Cardinal Logistics in August 2015.

In August 2015, Cardinal required Hurd "without cause" (Compl. ¶ 14, Dkt. No. 1) to submit to physical examinations—although he was already medically certified—and refused to hire him unless it received a new medical certificate. Hurd did so in October 2015, and the DOT-approved medical examiner, Dr. Aujla, approved Hurd on October 9. After receiving the certificate, Cardinal asked Hurd to submit to a hemoglobin AIC test, which he did on October 15. The test showed that he suffered from hyperglycemia and placed him at an increased risk for diabetes. The test also showed that Hurd took Dilantin for an unspecified condition. These medical examinations cost Hurd approximately $1,020 in lost wages at PlyGem, in addition to mileage.

Cardinal consulted its third-party administrator, HireRight, about Hurd's test results. For his part, Hurd reported that he was not sure of his exact diagnosis but that he had taken Dilantin for many years. Cardinal sent Dr. Burch, Hurd's treating neurologist, a written "medical clearance" inquiry about the reasons for prescribing Dilantin. Cardinal then required Dr. Burch to complete a medical clearance form, which he did on October 22. Dr. Burch reported that although Hurd suffers from complex partial epilepsy, he could safely operate a commercial motor vehicle.

Nevertheless, in November 2015, Cardinal refused to hire Hurd because of his diagnosis of partial epilepsy. Hurd filed an amended charge of disability discrimination in violation of the ADA with the EEOC on February 26, 2016.

The complaint contains two counts. Count One asserts that Cardinal knowingly discriminated against Hurd on the basis of his disability by subjecting him to prohibited medical examinations and refusing to retain or hire him despite his qualifications and jobs available within the company. It further asserts that Cardinal misapplied DOT and Federal Motor Carrier Safety regulations, including 49 C.F.R. §§ 391.41(b)(8) and 391.43(f)(1), to justify its refusal to hire Hurd. Count Two is pled in the alternative to Count One, and it asserts that even if Hurd did not have an actual disability at all relevant times, Cardinal refused to hire Hurd because of his record of partial epilepsy and its perception that he was disabled by the impairment, even though it knew he possessed the requisite qualifications.

## II. DISCUSSION

### A. Standard of Review

Summary judgment may be granted if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits [and] 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). The party opposing the motion, however, "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts'" showing a triable issue. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)). Parties may point to such facts by "citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the

absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted).

## B. Hurd's Motion for Partial Summary Judgment

Hurd moves for partial summary judgment as to Cardinal's liability for its violations of 42 U.S.C. § 12112(d) and related regulations promulgated by the Federal Motor Carrier Safety Administration (FMCSA). Specifically, Hurd argues that Cardinal violated the ADA by subjecting him to pre-employment medical examinations and disability-related inquiries. For the following reasons, the court will grant Hurd's motion.

Section 12112(d)(2) of the ADA governs pre-employment medical examinations and inquiries and provides that "a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2). Under § 12112(d)(3), "[a] covered entity may require a medical examination after an offer of employment has been made . . . ." Likewise, 29 C.F.R. § 1630.13(a), governing pre-employment medical examinations and inquiries, provides that "it is unlawful for a covered entity to conduct a medical examination of an applicant or to make inquiries as to whether an applicant is an individual with a disability or as to the nature or severity of such disability." Section 1630.14 states that a covered entity "may make pre-employment inquiries into the ability of an applicant to perform job-related functions," § 1630.14(a), and that a covered entity may require a medical examination or inquiry after making a conditional offer of employment, § 1630.14(b).

Cardinal makes three main arguments: 1) it is exempt from the pre-employment provisions of the ADA because it is subject to regulatory oversight by the FMCSA; 2) Hurd is

4

not a "qualified" individual with a disability within the meaning of the ADA and therefore lacks standing to enforce § 12112(d)(2); and 3) Hurd cannot show any alleged violation proximately caused damages.[1] The court addresses each argument in turn.

**1. Cardinal is not exempt from the ADA pre-employment provisions.**

In its briefing, Cardinal argues that "the ADA does not come into play in this case" because it is a motor carrier subject to FMCSA regulations. (Def.'s Mem. Supp. Mot. Sum. J. 1, Dkt. No. 38.) At the hearing, however, Cardinal softened its argument, conceded that the ADA applies to this case, and argued instead that its application is merely limited by the regulations that govern Cardinal as a motor carrier.

"When Congress enacted the ADA, it recognized that federal safety rules would limit application of the ADA as a matter of law." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 573 (1999). Under the FMCSA safety regulations, a commercial motor vehicle "driver is required, among other things, to undergo a medical examination and obtain a medical examiner's certificate that he or she is physically qualified to safely operate" a commercial motor vehicle (CMV). *See NLRB v. Pessoa Constr. Co.*, 632 F. App'x 760, 763 (4th Cir. 2015) (citing 49 C.F.R. §§ 391.11(b)(4), 391.41, 391.43, 391.45). Nevertheless, the relevant regulations present no direct conflict with the ADA, *see* 29 C.F.R. § 1630.15(e); 29 C.F.R. pt. 1630, App. § 1630.15(e). Stated differently, these regulations do not excuse Cardinal from the ADA's requirement that it extend a conditional offer of employment prior to conducting the DOT medical examination and the hemoglobin test.

---

[1] Cardinal's briefing also argues that the medical examination and hemoglobin test were permissible "inquiries" under 42 U.S.C. § 12112(d)(2)(B) and that Hurd cannot show discriminatory motive as to this claim, but it declined to pursue these arguments at the hearing. Rightly so. *See, e.g.*, *Perez v. Denver Fire Dept.*, 243 F. Supp. 3d 1186, 1196 n.9 (D. Colo. 2017) ("Plaintiff has not cited, and this court's own research has not found, any judicial precedent holding that 'intent' is a required element for a claim under § 12112(d).").

Cardinal also argues that pre-conditional-offer medical examinations do not constitute a per se violation of the ADA. Not so. To support its argument, Cardinal cites to *Prado v. Continental Air Transport Co., Inc.*, 982 F. Supp. 1304 (N.D. Ill. 1997), in which the District Court for the Northern District of Illinois rejected the plaintiff's argument that "the company committed a per se violation of the ADA by requiring him to undergo a medical exam before making a conditional offer of employment." *Id.* at 1307 n.1. It did so without citing a single case. *Id.* This holding has been rejected. *EEOC v. Celadon Trucking Servs., Inc.*, No. 1:12-cv-275, 2015 WL 3961180, at *14 (S.D. Ind. June 30, 2015). In *Celadon*, the court collected extensive case law to support its conclusion:

> Since the ADA itself provides a clear avenue for employers to conduct required medical examinations after conditional offers, there is no conflict between Section 102(d)(2) and the DOT regulations upon which [defendant] justifies its policy. We conclude that the ADA means what it says, and that pre-offer medical examinations—like the ones concededly required by [defendant] of its applicants—violate the statute.

2015 WL 3961180, at *15. Cardinal has not pointed to any persuasive authority supporting its argument to the contrary. The court thus concludes that Cardinal's pre-offer medical examinations and inquiries of and regarding Hurd constituted a per se violation of the ADA.

### 2. Hurd need not be a "qualified" individual with a disability under the ADA in order to have standing to enforce § 12112(d)(2).

Cardinal next argues that the plain language of 42 U.S.C. § 12112 "shows that only a qualified individual with a disability can bring a claim pursuant to Section 12112(d)," despite the "split of opinion on the issue." (Def.'s Opp'n 14–15, Dkt. No. 43.) Hurd responds that 42 U.S.C. § 12112(d)(2) and 29 C.F.R. § 1630.13(a) apply to him as an "applicant" for employment. (Pl.'s Mem. Supp. Mot. Summ. J. 17–18, Dkt. No. 36.)

The court agrees with Hurd. The Fourth Circuit has left open the issue of whether a person not actually disabled may maintain a claim under § 12112(d)(2)(A). However, many circuit courts of appeals cite *Griffin v. Steeltek, Inc.*, 160 F.3d 591, 594 (10th Cir. 1998), as persuasive in its holding that a claim under § 12112(d)(2) may proceed in the absence of disability. In *Griffin*, the Tenth Circuit reasoned: "The use of the terms ['job applicant' and 'employee'] in §§ 12112(d)(2) & (4) defining a broader class of people than the class specified elsewhere in the ADA (the class of qualified individuals with disabilities) cannot be accidental, and it points inextricably to the broader scope of coverage intended for those two sections." 160 F.3d at 594. Indeed, "[i]t makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability." *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997).

Cardinal's lone support for its argument is *Bone v. City of Louisville*, an unpublished opinion in which the Sixth Circuit concluded that "[s]ince [the plaintiff] has no disability, he is not eligible for the protection afforded by 42 U.S.C. § 12112(d)(2)." No. 99-5813, 2000 WL 761870, at *3 (6th Cir. May 30, 2000). But the Sixth Circuit has since joined the Second, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits in holding that the ADA protects "all employees from medical inquiries, regardless of whether they have a qualifying disability." *Bates v. Dura Auto. Sys., Inc.*, 767 F.3d 566, 573 (6th Cir. 2014).[2] The court, finding the reasoning in *Griffin* and its subsequent line of cases persuasive, rejects Cardinal's second argument as well.

---

[2] The Second, Sixth, and Eighth Circuits have held so in the context of 42 U.S.C. § 12112(d)(4) ("Medical examinations and inquiries: [e]xamination and inquiry"), whereas the other courts of appeals have held so in the context of the provision at issue here, 42 U.S.C. § 12112(d)(2) ("Medical examinations and inquiries: [p]reemployment").

7

**3. Hurd has demonstrated a cognizable injury-in-fact sufficient to establish liability.**

"Damages under [S]ection 12112(d) of the ADA must be based not merely on a technical violation of the statute but on some cognizable injury-in-fact *of which the statutory violation is a legal and proximate cause*." *Whindleton v. Coach, Inc.*, No. 3:13-cv-00055, 2015 WL 412021, at *3 (W.D. Va. Jan. 30, 2015) (quoting *Mickens v. Polk County Sch. Bd.*, 430 F. Supp. 2d 1265, 1278 (M.D. Fla. 2006) (citation omitted)). Hurd argues that there are at least two kinds of injuries here: 1) lost wages and mileage incurred when he took time off work and traveled for the medical examinations (and the accompanying inconvenience and stress); and 2) lost wages because Cardinal did not hire him.

The court concludes that Hurd's lost wages and mileage incurred while traveling to the pre-offer medical examinations are sufficient to establish injury-in-fact caused by Cardinal's violation of the ADA. Cardinal argues that Hurd would have incurred these costs even if it *had* extended him a conditional offer, because he still would have had to attend the medical examinations. While this hypothetical inquiry may be relevant to mitigation of damages, it does not present a question of material fact regarding liability. The court will grant Hurd's motion for partial summary judgment as to his claim regarding pre-employment medical examinations and disability-related inquiries.

**C. Cardinal's Motion for Summary Judgment**

Cardinal moves for summary judgment in its favor as to both Hurd's pre-employment examinations claim and his refusal to hire claim. Because the former is addressed fully above, the court will deny Cardinal's motion as to the pre-employment examinations and turn to Hurd's refusal to hire claim.

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees . . . ." 42 U.S.C. § 12112(a). Failure-to-hire claims asserted under the ADA are evaluated under a modified version of the framework promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* scheme, a plaintiff must first make a prima facie showing of discrimination by showing that he (1) is disabled within the meaning of the ADA; (2) applied for the vacant position; (3) was qualified for the position; and (4) was rejected for the position under circumstance giving rise to an inference of unlawful discrimination. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005).

Cardinal argues that Hurd has failed to state a prima facie case for discriminatory failure to hire because he was not a "qualified individual with a disability" under the statute. Specifically, Cardinal asserts that Hurd was not qualified because epilepsy is automatically disqualifying. Hurd argues that a history of epilepsy is not automatically disqualifying, and that a jury could find that a reasonable DOT examiner would qualify him and/or that a reasonable motor carrier subject to DOT regulations would hire him.

Under the FMCSA regulations, "[a] person is physically qualified to drive a commercial motor vehicle if that person . . . [h]as no established medical history or clinical diagnosis of epilepsy *or* any other condition which is likely to cause loss of consciousness or any loss of ability to control a commercial motor vehicle." 49 C.F.R. § 391.41(b)(8) (emphasis added). The relevant Medical Advisory Criteria—which were the same in 2015, as Hurd eventually conceded—provide further explanation but state that "[t]hese guidelines are strictly advisory." 49 C.F.R. pt. 391, App. A, Introduction. According to the advisory criteria, "the following

drivers cannot be qualified: (i) A driver who has a medical history of epilepsy; (ii) A driver who has a current clinical diagnosis of epilepsy; *or* (iii) A driver who is taking antiseizure medication." *Id.* App. H. Nevertheless, "[d]rivers with a history of epilepsy/seizures off antiseizure medication *and* seizure-free for 10 years may be qualified to drive a commercial motor vehicle in interstate commerce. Interstate drivers with a history of a single unprovoked seizure may be qualified to drive a commercial motor vehicle in interstate commerce if seizure-free *and* off antiseizure medication for a 5-year period or more." *Id.* (emphasis added).

Cardinal leans most heavily on 49 C.F.R. § 391.43, which governs the medical examination report form. During the relevant timeframe, § 391.43(f) provided that "the medical examination shall be performed, and its results shall be recorded, substantially in accordance with the following instructions and examination form." 49 C.F.R. § 391.43 (Oct. 1, 2015). The "instructions" on the medical examination report form include the above advisory criteria "to help medical examiners in determining whether a driver meets the physical qualifications for commercial driving." *Id.* § 391.43(f)(1), Form 649-F(6045). The advisory criteria are condensed on the form "to provide information to medical examiners that (1) is directly relevant to the physical examination and (2) is not already included in the medical examination form." *Id.* The "epilepsy" section of the form merely repeats § 391.41(b)(8) and the Medical Advisory Criteria set forth above.

Finally, the FMCSA Medical Examiner Handbook "provides information and guidance to the medical examiner." (Handbook 3, Dkt. No. 41-1.) With respect to "risk from seizures and epilepsy," the Handbook states that a number of considerations come into play to predict future risk of seizures: the "length of time an individual is seizure free and off anticonvulsant medication is considered the best predictor," as well as the "underlying cause of the seizure" and

10

the "area of the brain affected." (*Id.* at 137.) The Handbook then lists a number of "safety implications" regarding epilepsy for the evaluator to consider and repeats the advisory criteria.

While the court agrees with Hurd that the advisory criteria are merely advisory, the advisory nature does not defeat the conclusion that Hurd was not qualified. There is no dispute that Hurd takes anti-seizure medication or that the advisory criteria ban from qualification "a driver who is taking antiseizure medication." 49 C.F.R. pt. 391, App. A. Furthermore, the case law overwhelmingly supports Cardinal's argument that Hurd was not a qualified individual with a disability under the statute. For instance, in *Ward v. Skinner*, 943 F.2d 157 (1st Cir. 1991), the First Circuit held that epilepsy is automatically disqualifying under § 391.41(b)(8). The plaintiff—who had a history of epilepsy but had been on anticonvulsant drugs and without seizures for seven years—applied for a waiver from § 391.41(b)(8). 943 F.2d at 158. DOT denied his waiver, and Ward sought judicial review, arguing "that DOT did not make a sufficiently individualized inquiry in his case; and had it done so, it would have found that he can safely drive." *Id.* at 161. The court held that the defendant was not required to make a more detailed and individualized inquiry. *Id.* at 161, 163. Recently, the Fourth Circuit has cited *Ward* with approval in concluding that an individualized inquiry regarding the driver's license vision requirement is not necessary. *Wood v. Md. Dep't of Transp.*, No. 17-1388, 2018 WL 2095229, at *5 (4th Cir. May 7, 2018) (affirming dismissal of ADA and Rehabilitation Act claims).

Aligning with such reasoning, the Tenth Circuit has concluded that the district court properly granted summary judgment in favor of a defendant on a plaintiff's ADA claim despite the fact that, "[a]dmittedly, DOT's Medical Advisory Criteria are prefaced with a note indicating they are only advisory and nonbinding." *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 994–96 (10th Cir. 2001). The court "[had] little difficulty concluding that Defendant may rely on a

reasonable interpretation of DOT's Medical Advisory Criteria." *Id.* at 995. The *Tate* court's reasoning is particularly relevant to the instant case:

> Plaintiff argues however, that Defendant cannot override his medical examiner's certification. While we are not unsympathetic to Plaintiff's circumstance, we disagree. Due to legitimate safety and liability concerns, Defendant maintains a policy of requiring CMV operators to qualify to operate CMVs in compliance with DOT's physical requirements-including those requirements set forth in § 391.41(b)(8) of the Medical Advisory Criteria.
>
> Although Defendant acknowledged during discovery that Plaintiff could perform the essential functions of a CMV operator while taking the prescribed dosage of Dilantin, the fact that Plaintiff must take Dilantin to control focal seizures necessarily renders Plaintiff unable to meet a job-related requirement of the employment position, a requirement established by Defendant under DOT's standards. *See Ward*, 943 F.2d at 161-64 (noting the risk of seizure to an epileptic taking antiseizure medication "is low only if the individual actually takes his medicine; he may forget"). Because Plaintiff cannot meet the necessary job-related physical requirements to perform as a CMV operator in Defendant's employ, he is not a "qualified individual with a disability" as defined in 42 U.S.C. § 12111(8). Accordingly, the district court properly granted summary judgment in favor of Defendant on Plaintiff's ADA claim.

*Id.* at 995–96 (citations omitted). Indeed, other courts have simply assumed that epilepsy or a history of epilepsy is automatically disqualifying. *See, e.g.*, *Whitehead v. United Parcel Serv., Inc.*, 387 F. App'x 16, 18 (2d Cir. 2010); *Richardson v. Mabus*, 203 F. Supp. 3d 86, 150 (D. Me. 2016); *Sullivan v. Spee-Dee Delivery Serv., Inc.*, 138 F. Supp. 3d 1050, 1053 (W.D. Wis. 2015); *Anderson v. ProCopy Tech., Inc.*, 23 F. Supp. 3d 880, 888 n.10 (S.D. Ohio 2014).

Similarly, here, although Hurd has obtained a medical examiner's certification, it is without dispute that he fails to meet the requirements set forth in the advisory criteria and that Cardinal may rely on these requirements under DOT's standards. *See Tate*, 268 F.3d at 996. Accordingly, Hurd cannot establish that he was a "qualified individual with a disability" under

the ADA. The court will thus grant Cardinal's motion for summary judgment as to the failure-to-hire claim.

### III. CONCLUSION

For the reasons stated above, the court will grant plaintiff's motion for partial summary judgment, grant in part and deny in part defendant's motion for summary judgment, and deny as moot defendant's motion for judgment on the pleadings.

Entered: September 25, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge