UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JOHN MILLARD HURD,          )
                                        )
     Plaintiff,              )
                                          )
v.                                     )     Civil Action No.: 7:17-cv-00319
                                          )
CARDINAL LOGISTICS MANAGEMENT  )     By:  Elizabeth K. Dillon
CORPORATION,                  )          United States District Judge
                                          )
     Defendant.           )

## MEMORANDUM OPINION

Plaintiff John Millard Hurd filed this action against Cardinal Logistics Management

Corporation (Cardinal) asserting two counts under the Americans with Disabilities Act (ADA),

42 U.S.C. §§ 12101, *et seq.*, and the ADA Amendments Act of 2008 (ADAA).  On September

25, 2018, the court granted summary judgment to Hurd on his claim under 42 U.S.C. § 12112(d)

and to Cardinal on Hurd's claim under 42 U.S.C. § 12112(a).  (Dkt. No. 62.)  The parties later

reached a settlement on the issue of damages but filed a joint stipulation of dismissal with

prejudice that preserved jurisdiction in this court to decide the parties' motions for attorney's

fees.  (Dkt. No. 98.)  Both parties filed motions for attorney's fees and costs.  (Dkt. Nos. 92, 94,

102.)  Those motions are fully briefed, and the court dispensed with oral argument.  For the

reasons set forth below, the court will grant in part and deny in part Hurd's motion and will deny

Cardinal's motion.

## I.  BACKGROUND[1]

Hurd has a medical history of complex partial epilepsy but nonetheless became a

commercial driver for Plygem Industries, Inc. (Plygem).  In August 2015, after Cardinal acquired

---

[1] The court discussed much of the procedural and factual background of this case in its opinion granting
summary judgment (Dkt. No. 61) and relies on that background, in addition to the overview given herein.

Plygem, Hurd applied to be a commercial driver with Cardinal. Cardinal required Hurd to submit to physical examinations—although he was already medically certified to drive as required by the Department of Transportation (DOT)—and refused to hire him unless it received a new medical certificate. Among other things, the examination revealed that Hurd took Dilantin for an unspecified condition. Hurd's treating neurologist completed a medical clearance form disclosing that Hurd suffers from complex partial epilepsy but could safely operate a commercial motor vehicle. Based on this diagnosis, Cardinal refused to hire Hurd.

Hurd filed a charge of disability discrimination with the EEOC in 2016 and later filed this two-count action. In count one, Hurd asserted that Cardinal knowingly discriminated against him on the basis of his disability by subjecting him to prohibited medical examinations and refusing to retain or hire him despite his qualifications and jobs available within the company. Count two asserted that even if Hurd did not have an actual disability, Cardinal refused to hire Hurd because of his record of partial epilepsy and its perception that he was disabled by the impairment, even though it knew he possessed the requisite qualifications. Hurd sought a total of $1,000,000.00 in damages: $500,000.00 in compensatory and consequential damages, $200,000.00 in front pay and benefits (or, in the alternative, an order compelling Cardinal to hire Hurd), and $300,000.00 in punitive damages.

Throughout the course of litigation, the parties filed and responded to several motions, the most significant of which were a motion for judgment on the pleadings and cross-motions for summary judgment. They also engaged in discovery culminating in several motions in limine and submitted proposed jury instructions. The court ultimately granted summary judgment to Cardinal on one count and to Hurd on the other. A jury trial was scheduled to resolve the issue

of damages, but Hurd agreed to accept a lump-sum payment of $45,000.00 from Cardinal to settle his claims.

Hurd now seeks an award of attorney's fees and costs against Cardinal pursuant to 42 U.S.C. §§ 12117(a) and 2000e-5(k) for the period of June 25, 2017, through June 3, 2019.[2] (Dkt. Nos. 92, 102.) Cardinal also filed a motion for attorney's fees and costs against Hurd pursuant to 42 U.S.C. § 12205 and *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

## II. DISCUSSION

### A. Legal Standard

Under the ADA, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. §§ 12117(a), 2000e-5(k). The parties agree here that plaintiff is a prevailing party. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (explaining that a party is a prevailing party if it "succeed[s] on any significant issue in litigation which achieves some of the benefit [plaintiff] sought in bringing suit").

In order to determine the proper amount of a fee award, the court first calculates the lodestar figure by multiplying the number of reasonable hours expended by a reasonable billing rate. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), *as amended* (Jan. 23, 2014). In doing so, the court may also adjust the figure based on the so-called *Johnson* factors, first set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), and adopted by the Fourth Circuit in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).[3] *McAfee*, 738 F.3d at 89–90 (explaining the interplay of the lodestar

---

[2] Hurd's original motion sought fees and costs accrued through April 30, 2019; however, his supplemental motion extends that period to June 3, 2019.

[3] The twelve *Johnson* factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the

amount and the *Johnson* factors). "But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Thus, when reviewing a motion for attorney's fees, "courts have broad discretion to modify the lodestar to more accurately reflect the extent of a litigant's success." *Lux v. Judd*, 868 F. Supp. 2d 519, 533 (E.D. Va. 2012).

After determining the appropriate lodestar amount, the court should subtract hours spent in the litigation of unsuccessful claims "unrelated to successful ones." *McAfee*, 738 F.3d at 89–90 (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). Then, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the prevailing party. *Id.*; *see also Sergeant v. Acol*, No. 15-cv-2233, 2018 WL 276431, at *8–9 (D. Md. Jan. 3, 2018).

**B. Hurd's Motion for Fees and Costs**

Hurd seeks an attorney's fee award based on the following hourly rates and time expended on his case:[4]

| Timekeeper | Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| Paul G. Beers, Esq. (Member) | $350.00 | 342.30 | $119,805.00 |
| Emma M. Kozlowski, Esq. (Associate) | $225.00 | 142.20 | $31,995.00 |
| Christopher E. Collins, Esq. (Associate) | $200.00 | 19.40 | $3,880.00 |
| Terry G. McConaughy (Legal Assistant) | $125.00 | 47.60 | $5,950.00 |

customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*McAfee*, 738 F.3d at 88 n.5.

[4] Hurd clarified that Ms. Kozlowski left the firm in November 2018, at which time Mr. Collins replaced her. He notes that there was no overlap in the associates' services.

Attached to his motion are billing records supporting these totals, declarations from the attorneys seeking compensation regarding their experience, their hourly rates, and the time expended on this case, and a declaration from an attorney in the same market and community stating that the above rates are equal to or below fair market value based on the timekeepers' qualifications. (Dkt. Nos. 92-1, 92-5.)  Hurd also seeks reimbursement of costs in the amount of $5,524.64.

On June 12, 2019, Hurd filed a supplement to his motion for an award of reasonable attorney's fees and costs, seeking the following amounts in compensation for the period of May 1, 2019, through June 3, 2019[5]:

| Timekeeper | Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| Paul G. Beers, Esq. (Member) | $350.00 | 72.30 | $25,305.00 |
| Christopher E. Collins, Esq. (Associate) | $200.00 | 5.80 | $1,160.00 |

Hurd does not specify an amount of costs in his supplement but has increased the total costs requested by $864.30.

In total, Hurd requests $188,095.00 in fees and $6,388.94 in costs and expenses.

1. **Lodestar Figure**

   *a. Reasonable fee*

Whether an hourly rate is reasonable is generally determined by reference to the prevailing market rates in the relevant legal community for the type of work for which an award is sought.  *McAfee*, 738 F.3d at 91.  The relevant community is usually that in which the district court sits.  *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994).  The prevailing rate "may be established through affidavits reciting the fees of counsel with similar qualifications, information concerning fee awards in similar cases, and/or specific evidence of

---

[5] Hurd's supplemental motion includes fees accrued while litigating his and Cardinal's motions for attorney's fees.  Neither party contests that such fees are compensable.  *See Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 77 (4th Cir. 1995).

counsel's billing practice." *Freeman v. Potter*, No. 7:04cv00276, 2006 WL 2631722, at *4 (W.D. Va. Sept. 13, 2006) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)).

As stated above, Hurd's attorneys submitted declarations swearing that the rates requested in this case reflect their typical hourly rates. Hurd has further supported his motion with a declaration from Terry Grimes, Esq., an employment attorney practicing in the Western District of Virginia, who opined that based on the attorneys' qualifications, the requested rates are equal to or less than the fair market value of their services for a case of this nature and level of difficulty.[6] Additionally, Hurd cites to a number of cases from this district in which partners and associates with similar experience as Mr. Beers and Ms. Kozlowski have been paid $350.00 per hour and $225.00 per hour, respectively, for their work on employment-law cases. *See Brown v. Mountainview Cutters, LLC*, 222 F. Supp. 3d 504 (W.D. Va. 2016); *Supinger v. Commonwealth of Va.*, No. 6:15-cv-00017, 2019 WL 1461071 (W.D. Va. 2019). Similar rates are common in other types of cases as well. *See, e.g.*, *Scott v. Clarke*, No. 3:12-CV-00036, 2014 WL 1463755, at *6 (W.D. Va. Apr. 15, 2014) (granting fees of $400.00 and $230.00 per hour); *Naill v. Lincoln Mort., LLC*, No. 3:09CV00039, 2010 WL 2292133 (W.D. Va. June 7, 2010) (applying a rate of $375.00 per hour).

Cardinal argues that Hurd has failed to meet his burden to establish that the rates requested are reasonable in this market. It asserts that the rates requested for Mr. Beers and Ms. Kozlowski are excessive. In support of its argument, Cardinal notes that its own counsel billed at a rate of only $275.00. It supports this rate by citing to a declaration by Susan C. North, Esq.—its own attorney—which is further supported by John Bredehoft, Esq., another attorney

---

[6] Mr. Grimes states that fair market value for Mr. Beers' services would approach $400 per hour. (Dkt. No. 92-5 ¶ 9.) However, the court notes that Mr. Grimes recently requested an hourly rate of $400.00, which this court reduced to $350.00. *See, e.g.*, *Supinger*, 2019 WL 1461071, at *3.

from the Norfolk, Virginia, area.[7]  It further cites to *Lusk v. Virginia Panel Corp.*, 96 F. Supp. 3d 573 (W.D. Va. 2015), in arguing that more reasonable rates for Mr. Beers and Ms. Kozlowski would be $275.00–300.00 and $150.00, respectively.

The court disagrees and finds the rates requested to be reasonable.  Cardinal relies on declarations of attorneys based in other communities whereas Hurd cites to declarations of local attorneys with more extensive knowledge of billing rates in this community.  More importantly, this court has recently awarded fees at the requested rates to attorneys with similar experience and qualifications as Mr. Beers and Ms. Kozlowski.

Cardinal further argues that the rate of $125.00 per hour for a legal assistant is unsupported by any documentation of Ms. McConaughy's qualifications.  However, the rate of $125.00 per hour is supported by the cases cited in both parties' memoranda.  Specifically, in both *Supinger* and *Lusk* the moving parties requested, and the court applied, rates of $125.00 per hour for paralegal or legal assistant services.  *See Supinger*, 2019 WL 1450530, at *3 n.7 (noting that no party objected to the rate of $125.00 for paralegals); *Lusk*, 96 F. Supp. 3d at 584 n.3 (using the rate of $125.00 to determine the proper award of fees for paralegals).  Accordingly, the court finds the rates listed above to be reasonable for this market, the relative experience of the billing professionals, and the nature and difficulty of this case.

*b.  Reasonable hours*

As for the hours requested, Cardinal argues that the time expended by Hurd's counsel was excessive and unreasonable.  It asks the court to reduce the number of hours due to rounding, block billing, vagueness in time entries, and duplicative and excessive time entries.  In response to Hurd's supplemental motion, Cardinal restates many of the same arguments.

---

[7] Notably, although Mr. Bredehoft found Ms. North's fees to be "more than reasonable" (Dkt. No. 96-1), he states in his declaration in support of Cardinal's motion for attorney's fees that a reasonable rate for Ms. North's services in the Western District would "reach or exceed $400 per hour."  (Dkt. No. 95-2, ¶ 20.)

However, it also points out that Mr. Beers, as a member of the firm, billed significantly more time than Mr. Collins, an associate. These issues will be addressed in turn below.

Cardinal first points out that "[m]any of Plaintiff's counsel's time entries contain round, whole numbers, leading to concerns as to rounding and the precision of the record-keeping." (Def. Mem. Opp. 11, Dkt. No. 96.) It emphasizes that on December 7 and 8, 2017, counsel recorded three hours for reviewing documents produced by Cardinal. To the contrary, while the records included with Hurd's motion contain some whole- or half-hour entries, the records as a whole do not indicate that Hurd's attorneys impermissibly rounded their hours.

Cardinal next argues that counsel for Hurd engaged in "block billing." "'Block billing' is generally defined as 'grouping, or lumping, several tasks together under a single entry, without specifying the amount of time spent on each particular task.'" *McAfee v. Boczar*, 906 F. Supp. 2d 484, 498 (E.D. Va. 2012) (quoting *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006)). The practice is disfavored because it "does not provide the court with a sufficient breakdown to support an attorneys' fee request." *Griffin v. Areva, Inc.*, No. 6:16cv29, 2016 WL 7736953, at *3 (W.D. Va. Dec. 15, 2016), *adopted by* 2017 WL 121073 (W.D. Va. Jan. 12, 2017). Thus, block billing constitutes grounds for reducing a fee award. *Guidry*, F. Supp. 2d at 294.

*Lusk* provides an excellent example of the type of block billing warranting a fee reduction. There, counsel include in one entry, "further legal research and drafting; shepardizing cases; review brief w/ Mr. Schulte; teleconference w/ Ms. Schulte; research and revise brief; read cases [listed]; review Defendant's brief; teleconference Schulte re defenses needed. Client consult; finalize declaration on further efforts to obtain work; 9 hours." *Lusk*, 96 F. Supp. 3d

582.  The court found that "it is impossible to tell how much time was spent on what particular task in order to determine if the time spent was reasonable." *Id.* at 583.

Similar entries do not appear in Mr. Beers' or Ms. Kozlowski's entries with enough frequency to warrant a reduction in Hurd's award.  Instead, their records specify how much time each individual attorney devoted to each task and a total time billed each day.[8]

Conversely, entries for Ms. McConaughy and Mr. Collins provide only a total time for each day without identifying the time spent on each individual task.  For example, the April 6, 2018 entry for Ms. McConaughy states, "Revise memorandum; check cites; copy deposition excerpts; telephone call to Hurd; revise motion for partial summary judgment and motion to exclude expert witness; locate and scan exhibit to same; file motion to exclude witness with Court; file motion, memorandum, and exhibits with Court; print and save all to Worldox; update pleading index; letter to Judge Dillon," but provides only a total time of 4.10 hours.  (Dkt. No. 92-1, at 16.)  Similarly, on April 24, 2019, Mr. Collins reported seven different tasks spanning 3.60 hours, including research, meeting with Mr. Beers, sending e-mails, and drafting documents.  (*Id.* at 23.)  Courts in this circuit have consistently reduced fees based on similar practices.  *See McAfee*, 738 F.3d at 86 (affirming a ten percent reduction in hours to account for block billing); *Lusk*, 96 F. Supp. 3d at 583 (reducing the total fee award by five percent for block billing) *Sky Cable, LLC v. Coley*, No. 5:11cv00048, 2014 WL 4407130, at *5 (W.D. Va. Sept. 8, 2014) (adopting a magistrate judge's recommendation to impose a fifteen percent reduction in fees); *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 933 F. Supp. 2d 762, 778 (E.D. Va. 2013) (imposing a 20% reduction in hours for block billing and "unintelligible and inconsistent

---

[8] For example, on October 8, 2018, Mr. Beers billed for "Multiple emails with opposing counsel re pre-trial issues (.5); draft Amended Joint Report (1.5); telephone call to opposing counsel (.1); telephone call from opposing counsel (.4); continue drafting pre-trial memorandum (4.5); draft motion in limine (.8)."  (Dkt. No. 92-1, at 20.)

time entries"); *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 717 (E.D. Va. 2012) (reducing a fee award by ten percent for block billing).

As for the records submitted in support of Hurd's supplemental fees, it seems the block-billing issue has largely resolved. For example, Mr. Collins has provided more accurate records and, while the legal assistants working with the attorneys continued their practice of lumping together multiple tasks, Hurd was not billed for any of the legal assistants' time. Accordingly, the court will reduce Ms. McConaughy's and Mr. Collins' hours from Hurd's original motion by ten percent.

Cardinal also asserts that Hurd's time entries are unreasonably vague. "[T]he use of excessively vague time descriptions is a generally disfavored billing practice. Such descriptions 'inhibit the court's reasonableness view' and also 'justify a percentage reduction in the fee award.'" *Supinger*, 2019 WL 1450530, at *5 (alteration in original) (quoting *Brown*, 222 F. Supp. 3d at 514). Relying on *Supinger*, Cardinal contends that Hurd's records are "replete" with entries this court have previously found to be inadequate. The court in *Supinger* found entries inadequate where the description included only phrases such as "legal research," "prepare for deposition," or "work on discovery." *Id.* at *4. However, this case is again distinguishable.

*Supinger* involved egregiously inadequate time records and presumptive overbilling. There, the court took issue with entries like "reviewing filings on ECF system" where the docket included 235 entries. Significantly, counsel also amassed 144.6 hours for "'review' of discovery documents, transcripts, or briefs," and 22.7 hours of preparation for a deposition that lasted only 3.2 hours. The court noted that counsel's failure "to specifically describe the tasks the attorneys performed requires this Court to 'labor to dissect' the individual entries to see how they match up with the various claims and phases of litigation." *Id.* at *4–5. By contrast, while Hurd's time

records contain occasional entries for unspecific activities like "work on discovery responses," "continued legal research," and "prepare for depositions," the attorneys in this case more often included additional details. For example, on March 27, 2018, Mr. Beers recorded 2.5 hours to "prepare for deposition *of MedExpress medical examiner*." (Dkt. No. 92-1, at 15 (emphasis added).)

Moreover, the court in *Supinger* took issue with the vague time entries partly because the plaintiff asserted fourteen different claims and succeeded on only one of them. Consequently, it was unclear how much time counsel devoted to the plaintiff's only successful claim. However, the court expressly acknowledged that similarly vague entries might suffice in less complicated cases. *Supinger*, 2019 WL 1450530, at *5 ("While these sorts of entries may suffice for short-lived cases, this litigation has continued for years and amassed 235 docket entries."). Here, Hurd asserted two claims. While counsel's records do not always identify the precise issue researched, the two claims were at least partially related, and the court need not "labor to dissect" counsel's records. Unlike in *Supinger*, the entries in this case are not facially unreasonable.

Cardinal next argues that "[m]uch of the associates' time entries are duplicative, unnecessary, and unreasonable under the circumstances." (Def. Mem. Opp. 13.) However, Cardinal has not identified any examples of such duplicative entries.[9] After a review of Hurd's record, the court is satisfied that counsel did not include duplicative entries warranting a reduction in counsel's reported hours.

---

[9] In its objection to Hurd's supplement, Cardinal points out that Mr. Collins spent 1.1 hours drafting a memorandum to Mr. Beers regarding attorney's fees on the same day that Mr. Beers spent 3.0 hours performing legal research. It notes that "presumably [Mr. Collins' work] involved legal research." (Def. Mem. Opp. to Pl. Supp. Mot. 4, Dkt. No. 104.) This is one example of *potential* duplication in a record that otherwise does not suggest unreasonably duplicated or excessive billing practices.

Finally, Cardinal disputes the reasonableness of Hurd's supplemental fee request based on the allocation of time between Mr. Beers and Mr. Collins.[10] Cardinal points out that Mr. Beers, as a member of the firm with a much higher billing rate, spent almost 12.5 times the number of hours on Hurd's fee litigation than Mr. Collins. Much of Mr. Beers time contained entries for legal research and drafting that could have been performed by Mr. Collins. The result is a blended billing rate of $338.86 per hour for work performed mostly on fee litigation. By comparison, the blended billing rate for all attorneys included in Hurd's original motion—including Ms. Kozlowski, who billed at a higher rate than Mr. Collins—was only $308.95 per hour.

Taking into account the *Johnson* factors provided above—namely, the skill required and the novelty and difficulty of the questions raised after May 1, 2019—the court agrees that this allocation of work was unreasonable and will therefore reduce the number of hours requested for Mr. Beers in Hurd's supplemental motion.[11] Cardinal points out that Mr. Beers engaged in 10.7 hours of legal research that should have been performed at Mr. Collins' billing rate. The court will therefore reduce Mr. Beers' time by 10.7 hours to reach a total of 61.6 hours for the period beginning May 1, 2019. This reduction results in a blended billing rate (based on the total reported time of 78.1 hours) of $290.90 per hour, which reflects a more appropriate rate for this period of litigation.

\*      \*      \*

---

[10] Cardinal did not raise this issue in its objection to Hurd's original fee request.

[11] The remaining *Johnson* factors do not warrant a variation in the fees requested at this stage. Namely, the time and labor expended, opportunity costs, customary fee for like work, time limits imposed, experience and reputation of the attorneys, undesirability of the case, attorney's fees in similar cases, and the nature and length of the attorney-client relationship do not suggest any variation is appropriate. The court will incorporate additional *Johnson* factors into the later steps of its analysis, below.

Based on the above, the court finds that the hourly rates requested by counsel for Hurd are reasonable. Multiplying those rates by the hours expended—less the ten percent reduction in Ms. McConaughy's and Mr. Collins' time and the 10.7-hour reduction in Mr. Beers' time—results in an initial lodestar calculation of $183,394.00 in fees, including the billing period covered by Hurd's supplement. The court finds no reason to reduce the requested costs of $6,388.94 at this stage of its analysis.

## 2. Reduction for Hours Spent on Unsuccessful Claims Unrelated to Successful Ones

"After determining that the hours expended and the attendant rates requested by a lawyer for a prevailing party are reasonable, a court is obliged to 'subtract fees for hours spent on unsuccessful claims unrelated to the successful ones.'" *McAfee*, 738 F.3d at 91. Where a plaintiff's claims for relief "involve a common core of facts or [are] based on related legal theories[,] [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 345. In such cases, the "lawsuit cannot be viewed as a series of discrete claims." *Id.* "The Fourth Circuit has repeatedly interpreted related claims to be those that are 'inextricably intertwined' with the successful claim." *Supinger*, 2019 WL 1450530, at *8. Claims are "inextricably intertwined" when "it is impossible to isolate" one claim from the other or success on one claim depends upon the development and presentation of facts surrounding the other claims. *See Goodwin v. Metts*, 973 F.2d 378, 382 (4th Cir. 1992) (quoting *Abshire v. Walls*, 830 F.2d 1277, 1283 (4th Cir. 1987)).

Hurd suggests that by bringing two alternative claims under the same section of the ADA, his unsuccessful claim under 42 U.S.C. § 12112(a) is inextricably intertwined with his successful claim under subsection (d). He notes that both of his claims were based in

discrimination under the ADA arising under a common core of facts. Accordingly, he argues that the requested fee should not be reduced in step two of the *McAfee* calculation.

Cardinal points out, however, that the bulk of the discovery and preparation for this case was related not to Hurd's successful claim, but to his unsuccessful refusal-to-hire claim. It argues that Hurd's complaint alleged two distinct claims that required different elements and application of different law. It further disputes Hurd's assertion that the two claims relied on a common core of facts.[12]

Although Hurd asserted two arguably distinct legal theories, his claims undoubtedly arise from the same nucleus of facts. Both are rooted in Hurd's complaints of discrimination based on his medical history. To pursue either claim, he would have needed to flush out facts regarding, among other things, Cardinal's pre-employment medical examination requirement, Hurd's medical history, and the basis of Cardinal's decision not to hire Hurd.[13] Thus, Hurd's claims were inextricably intertwined, and the court will not reduce the fees requested under the second *McAfee* prong.

### 3. Degree of Success

Finally, the most important factor in calculating a fee award is "the relationship between the extent of success and the amount of the fee award." *Hensley*, 461 U.S. at 436, 439–40; *McAfee*, 738 F.3d at 92. "What the court must ask is whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'"

---

[12] Cardinal also argues that Hurd's unsuccessful claim was frivolous and that the court should exercise its discretion to reduce the fee award based on the degree of success and excessive hours spent on litigation. While the court disagrees with Cardinal's characterization of Hurd's claim as "frivolous," it nonetheless acknowledges that Hurd should not receive the entirety of his fee request. Nonetheless, Cardinal's arguments are better addressed in the third stage of the *McAfee* analysis, and the court will revisit them there.

[13] Cardinal asserts that Hurd's claims "cannot be 'twin theories'" because Hurd succeeded on one but not the other. This is obviously fallacious. That "[o]ne worked and one did not" has little bearing on this analysis. (Def. Mot. Opp. 18.) In fact, the entire analysis in *McAfee* regarding whether successful and unsuccessful claims are related enough to warrant a full fee award is predicated on a scenario where some claims succeeded and others did not.

*McAfee*, 738 F.3d at 92 (quoting *Hensley*, 461 U.S. at 434). "When a plaintiff's results have been 'excellent,' the award should account for 'all hours reasonably expended on the litigation,' even if some claims prove unsuccessful; alternatively, when a plaintiff 'has achieved only partial or limited success,' the court should reduce the award to prevent the plaintiff from obtaining 'an excessive amount' in comparison to his low measure of success." *Supinger*, 2019 WL 1450530, at *9 (quoting *Hensley*, 461 U.S. at 436).

The court begins by "compar[ing] the amount of damages sought to the amount awarded." *McAfee*, 738 F.3d at 93 (quoting *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005)). In his complaint, Hurd requested an amount "not to exceed" $1 million; however, after the court issued its opinion on the parties' motions for summary judgment, Hurd agreed to accept just $45,000.00 to settle his claims. Hurd received only 4.5% of the award he sought. Moreover, "[a]lthough a substantial disproportionality between a fee award and a verdict, standing alone, may not justify a reduction in attorney's fees, a lack of litigation success will." *Id.* at 94. And Hurd succeeded on only one of two asserted claims.

Hurd suggests the court should nonetheless grant his fee request in full. He argues that the court's opinion on summary judgment has significant precedential value. According to Hurd, Cardinal has followed a practice of requiring pre-employment medical examinations in violation of § 12112(d), which it must now cease. He explains that the court's opinion resolved a matter of first impression in this district with potentially wide-reaching implications—whether a motor carrier subject to the Federal Motor Carrier Safety Administration's regulations is also subject to § 12112(d).

Conversely, Cardinal largely ignores Hurd's success, contending instead that Hurd's refusal-to-hire claim was so frivolous that it should bar any fee award.[14] Alternatively, Cardinal asks the court to reduce Hurd's fee award in light of Hurd's limited success.

The parties advance two different extremes, neither of which is appropriate. In particular, the court disagrees with Hurd regarding the significance of his success under § 12112(d). Hurd compares his case to *Mercer*, in which a female athlete challenged Duke University's decision to cut her from the men's football team under Title IX. *Mercer* "established that the contact-sports exemption [of Title IX] does not permit a school to discriminate against women that the school has allowed to participate in contact sports." *Mercer*, 401 F.3d at 206. The case was the first of its kind and served as guidance for schools later faced with similar issues. The Fourth Circuit went so far as to call *Mercer* a "milestone in the development of the law under Title IX." *Id.* at 207. Hurd's comparison artificially inflates the importance and precedential value of his case. While this case may have been one of first impression in the Western District of Virginia, the court was not without guidance—it reached its decision based on existing case law from other courts. *See EEOC v. Celadon Trucking Servs., Inc.*, No. 1:12-cv-275, 2015 WL 3961180 (S.D. Ind. June 30, 2015).

On the other hand, Cardinal overstates the egregiousness of Hurd's decision to pursue a § 12112(a) claim. Although the weight of authority opposed Hurd's position, the court disagrees that his decision to include the refusal-to-hire claim was "groundless." As discussed in more depth below, Hurd's position was supported by the facts of his prior history of qualifying and

---

[14] Hurd argues that Cardinal's argument on this point is misplaced and its only remedy for a frivolous claim is to seek an award of its own fees and costs related to that claim. Cardinal has done so, and the court will address its motion below. However, the court also has discretion to reduce a plaintiff's fee award based on the "novelty and difficulty of the questions raised" and "the attorney's expectations at the outset of the litigation." *McAfee*, 738 F.3d at 88 n.5. By its own definition, a frivolous claim does not raise a new or difficult question, and the plaintiff's attorney should recognize the low probability of success on such claim. Thus, to the extent Hurd asserted a claim with little or no merit, the court can certainly consider whether a reduction in Hurd's award is warranted.

working as a professional driver. Additionally, existing binding authority did not foreclose Hurd's legal argument. Accordingly, Hurd's decision to include both claims does not warrant a complete denial of fees.

Nonetheless, taking into account Hurd's failed claim under § 12112(a), the court finds that some reduction in fees is appropriate. Hurd succeeded on his claim under § 12112(d), but the relief he agreed to accept was far less than he originally sought. And, although the amount of recovery is not the only factor to consider, Hurd's argument was not particularly novel or significant. Thus, his success under § 12112(d) alone does not warrant an award of the full amount requested. Conversely, while Hurd's claim under § 12112(a) failed, it involved the same core of facts as his claim under § 12112(d), making it difficult to reduce the fee award based on his failure on one claim without reducing the amount requested for litigation of the other claim. That said, Hurd pursued both claims even though his § 12112(a) claim was not novel or difficult, and counsel likely did not have high expectations for success on that claim at the outset of litigation. Based on the degree of success achieved, and in light of the reductions already imposed above, the court finds a further 40% reduction in the fees and costs award is warranted. This reduction is sufficient to avoid a windfall to counsel while not so extreme as to discourage counsel from taking on similar cases in the future.

Accordingly, the court will grant Hurd's motions in part and deny them in part, awarding him a total of $110,036.40 in fees and $3,833.36 in costs and expenses.

## B. Cardinal's Motion for an Award of Attorney's Fees and Costs

Cardinal also seeks an award of attorney's fees as a prevailing party under the reasoning of *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412 (1978). In large part, Cardinal reasserts the arguments it raised in opposition to Hurd's motion,

discussed above. Specifically, it argues that Hurd's counsel failed to perform a pre-filing investigation into the merits of Hurd's claim under § 12112(a). Cardinal reasons that a search of case law on the issue would have indicated that Hurd's refusal-to-hire claim was baseless.

In *Christiansburg Garment Co.*, the Supreme Court held that a trial court "may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation," or that "the plaintiff continued to litigate after it clearly became so." *Id.* at 421, 422. Although the "groundless" claim need not have formed in subjective bad faith, "if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Id.* at 422. Importantly, the Court qualified its holding, noting that "the term 'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case." *Christiansburg Garment Co.*, 434 U.S. at 421. It further urged district courts to "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421–22 ("This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable.").

Accordingly, the decision to grant a fee award to a defendant is "a conservative tool, to be used sparingly in those cases in which the plaintiff presses a claim which he knew or should have known was groundless, frivolous or unreasonable." *Arnold v. Burger King Corp.*, 719 F.2d 63, 65 (4th Cir. 1983). Neither the Supreme Court nor the Fourth Circuit have provided

definitive guidance as to what constitutes groundless, frivolous, or unreasonable claims. *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 517 (4th Cir. 2012) ("There is no set quantity of evidence separating claims that are frivolous, unreasonable, or groundless from those that are not."). *But see Equal Emp't Opportunity Comm'n v. CVS Pharmacy, Inc.*, 907 F.3d 968, 973 (7th Cir. 2018) ("When it is a farfetched *legal* theory that makes a plaintiff's case frivolous, we have held that an 'award of fees is only permitted when litigation proceeds in the face of controlling and unambiguous precedent.'"). The Fourth Circuit has acknowledged that the general nature of its guidance reflects its "great deference to the trial court's assessment of whether the plaintiff's claim" warrants an award of fees. *Id.*; *see also Arnold*, 719 F.2d at 65 ("The fixing of attorneys' fees is peculiarly within the province of the trial judge, who is on the scene and able to assess the oftentimes minute considerations which weigh in the initiation of a legal action.").[15]

Relying on *Goldstein v. Costco Wholesale Corp.*, 322 F. Supp. 2d 660 (E.D. Va. 2004), Cardinal argues that Hurd's failure to conduct an adequate pre-filing investigation entitles Cardinal to a fee award. It reasons that if Hurd had engaged in an adequate pre-filing inquiry, he

---

[15] Cardinal suggests that "[a] plaintiff's pursuit of an ADA claim after the point at which no reasonable fact-finder could have found for plaintiff, entitles an ADA defendant to recover some amount of attorney's fees." (Def. Mem. Supp. 7, Dkt. No. 95.) In support, Cardinal cites to *Carter v. McCreary Modern, Inc.*, No. 5:10-CV-00014-RLV-DSC, 2012 WL 1077445 (W.D.N.C. 2012). There, the district court granted the defendant's motion for summary judgment, before holding that "[a]s no reasonable finder of fact could have returned a verdict for Plaintiff, Plaintiff's lawsuit was, at least at the close of discovery, 'unreasonable,' and Defendant is therefore entitled to some measure of attorney's fees." *Id.* at *1. In effect, Cardinal appears to argue that if no reasonable fact-finder could agree with the plaintiff, then the claim must be unreasonable.

To be sure, a claim might become frivolous during the course of litigation, and if a plaintiff nonetheless continues to pursue its claim, the court may award the defendant attorney's fees. *Christiansburg Garment Co.*, 434 U.S. at 422. However, Cardinal's reading of *Carter* too closely resembles a rule under which an unfavorable ruling on summary judgment sticks plaintiffs with the defendant's litigation costs. After all, summary judgment is proper only where "no reasonable jury could find for the nonmoving party on the evidence before it." *See Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). Such a holding is clearly contrary to the Supreme Court's decision in *Christiansburg Garment Co.*

To conflate an "unreasonable" claim with a claim for which no reasonable jury could return a plaintiff's verdict would undoubtedly result in the type of chilling effect the Supreme Court sought to avoid. It would encourage plaintiffs to abandon claims that might toe the line of the summary judgment standard or else face not only dismissal, but also an assessment of fees. The court therefore declines to adopt such an unforgiving standard for awarding fees to prevailing defendants.

would have discovered that his claims were "untenable as a matter of law." (Def. Mot. 9.) In *Goldstein*, the court awarded fees to the defendant because if the plaintiff had conducted an adequate pre-filing inquiry, it would have known that its claim was meritless. The plaintiff failed to consult any source other than its own client, when numerous other witnesses contradicted the plaintiff's account of the facts. The court therefore found that the plaintiff's claim had "no merit." *Goldstein*, 322 F. Supp. 2d at 666 ("While Plaintiffs' lawsuit may not have been frivolous, an investigation would have revealed that Plaintiffs' civil rights claim was brought unreasonably because there was no merit to Mr. Goldstein's claim that he suffered discrimination at Costco due to his epilepsy.").

Contrary to Cardinal's assertions, at no point prior to the court's opinion on the parties' cross-motions for summary judgment did Hurd's claim become similarly frivolous, unreasonable, or otherwise meritless. Hurd proceeded on the theory that although Federal Motor Carrier Safety Administration regulations exclude individuals with histories of epilepsy from the ADA's scope, Hurd was nonetheless entitled to an individualized review of his case to determine whether he could drive safely. He based his claim on the facts that a DOT medical examiner certified Hurd as a driver for the two-year period between November 3, 2014, and November 3, 2016, that he had successfully driven a commercial truck for Plygem for approximately two years, and that Cardinal nonetheless refused to accept his DOT certificate, required him to take additional tests, and ultimately refused to hire him. Moreover, while out-of-circuit authority opposed Hurd's argument, neither the Fourth Circuit nor this court had previously spoken directly on this issue. Thus, Hurd's theory was neither factually nor legally frivolous or unreasonable.[16]

---

[16] Cardinal further cites to *Hutchinson v. Staton*, 994 F.2d 1076 (4th Cir. 1993), in support of its position. There, however, the plaintiffs asserted nothing more than a conspiracy theory that came to light when, at trial, the

Cardinal highlights a portion of the court's September 25, 2018 memorandum opinion to argue that Hurd's position was foreclosed by binding precedent. It notes that the Fourth Circuit adopted the position that an individualized inquiry was not necessary in *Wood v. Maryland Department of Transportation*, 732 F. App'x 177 (4th Cir. 2018). However, the Fourth Circuit decided *Wood* on May 7, 2018, after this court had already held a hearing on the parties' motions for summary judgment.[17] While success on Hurd's claim may have been unlikely, the court cannot say it was "unreasonable, frivolous, or groundless." Instead, this issue is better addressed through a reduction in Hurd's fee award, as discussed above.

Accordingly, the court will deny Cardinal's motion for attorney's fees pursuant to *Christiansburg Garment Co.*[18]

## III. CONCLUSION

For the reasons set forth above, the court will grant in part and deny in part Hurd's motion for an award of reasonable attorney's fees and costs and his supplemental motion for

---

plaintiffs could provide no evidence in support of its claims. The lack of factual support (and presence of bad faith) is an example of a much more egregiously unreasonable claim than the claim at issue here. The Fourth Circuit found that the plaintiffs' claims were factually groundless, noting that "[e]ven by the time of trial, plaintiffs were unable to back their conspiracy theory with anything beyond conjecture and speculation." *Id.* at 1080. *Hutchinson* adds little to Cardinal's argument. As discussed above, Hurd pointed to concrete facts and a legal theory that was previously untested in this court. That his claim was weak and ultimately failed does not, without more, entitle Cardinal to an award of attorney's fees.

[17] Cardinal further argues that *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555 (1999), "rejected the notion of requiring employers to conduct an 'individualized' analysis for each applicant with a disability in the context of similar DOT regulations." (Def. Reply 14, Dkt. No. 101.) However, *Albertson's* is not as on point as Cardinal suggests, and does not speak to the precise issue presented by Hurd's § 12112(a) claim.

[18] The parties devote much of their briefs to discussions of whether a prevailing defendant may be awarded fees for unsuccessful frivolous claims when the plaintiff succeeded on nonfrivolous claims, and what the appropriate lodestar calculation and resulting fee award should be. Because the court finds that Hurd's claim fails the threshold requirement of *Christiansburg Garment Co.*, the court need not delve into the parties' remaining arguments regarding which fees are compensable.

attorney's fees and costs.  The court will deny Cardinal's motion for an award of attorney's fees and costs.  A separate order will be entered.

Entered: December 10, 2019.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge